## No. 2636.

## CHARLES H. FRANKLIN *v.* THE STATE.

ASSAULT AND BATTERY—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for assault and battery.

APPEAL from the County Court of Leon.    Tried below before the Hon. H. B. Pruitt, County Judge.

The conviction was for an assault and battery upon Sam H. Winn, and the penalty assessed against the appellant was a fine of five dollars.

Sam H. Winn testified, for the State, that he was a deputy sheriff of Leon county, located at the town of Marquez.    On the night of August 13, 1887, the witness and Mr. Yancy Burns went to the depot in Marquez to meet a lady passenger who was due on the incoming train.    Witness reached the depot a few steps in advance of Burns, Campbell LaFlore and others, just as the train pulled in, and became separated from them by the said train.    While the passengers were getting off the train for supper, some person on the other side of the train from witness called to him that a fight was in progress.    Witness went at once to the other side of the train, and found LaFlore engaged in a fight with defendant.    LaFlore was on his hands and knees, endeavoring to get away from defendant, who was striking him with a plank.    Witness went up to defendant, told

defendant that he was an officer, and would have to arrest him. Defendant replied: "By God (or God d—n), I will see that you don't." Witness then seized the defendant, and in the struggle that ensued defendant struck him, witness, with his fist and with a plank. He finally broke loose from witness, seized witness by the collar and struck him over the head with a piece of wood. Witness had no weapon when he undertook to arrest defendant, but, when defendant struck witness with the piece of plank and knocked him back a step or two, some person called to witness: "Get your pistol." Defendant said: "Let me get mine, too."

Continuing, this witness said that he did not know how the fight between defendant and La Flore began. He did not then know the defendant, and did not suppose the defendant knew him. After the occurrence described the defendant got back on the train, and witness followed and arrested him, the defendant making no resistance. Having arrested defendant, the witness put a chain on his legs and tied his hands behind him, and then took him to town, where Justice of the Peace Watson proceeded to investigate the complaint filed against him. While that investigation was in progress some person from behind the witness struck the defendant a severe blow with a heavy weight that belonged to a platform scales. Defendant was still tied when struck by the scales weight. Witness had to go home after the investigation, and, not desiring to take defendant with him, he turned him over to a negro named Ephraim Malone, and directed Malone to take defendant out of town for the night in order to prevent the defendant being further hurt.

Mrs. Lock testified, for the defense, that she was a passenger on the train that stopped for supper at Marquez on the night of August 13, 1887. Defendant was the porter on the train. As the train slowed up at Marquez the defendant appeared at the door of the ladies' coach and announced the supper station. While the passengers were getting off the witness heard a noise outside. Looking out of the car window, the witness saw three or four men beating the defendant with sticks, defendant being down on his hands and knees. The defendant presently made his escape and ran around the train, pursued by the men.

S. P. Cocherane, conductor on the train, testified, for the defense, that when the train stopped at Marquez for supper on the night of August 13, 1887, the defendant, in the discharge of

his duties, got off the train, and, with the foot box in his hand, took his position at the steps of the ladies' coach to assist passengers desiring supper to get off. About that time a man, whose name witness had since learned to be La Flore, crowded up to the steps, when the defendant said to him: "Don't push me down." Thereupon La Flore kicked the defendant on the jaw. Thereupon the fight became general, three other men joining La Flore in beating defendant, one of them being Winn, who, as witness afterwards learned, was a deputy sheriff. The witness attempted to quell the riot, when one of the defendant's antagonists struck him, witness, above the eye with a coal cinder, and La Flore seized a heavy piece of iron pipe, three or four feet long, and "punched" at witness. About that time the defendant escaped and went back into a car. He was soon followed and arrested by Winn and a posse.

George Hughey, the paper vendor on the train, testified, for the defense, substantially as did the witness Cocherane. He heard some person, during the fight, call to Winn to get his pistol. Defendant said: "Let me get mine, too," and fled into the car where witness was, and asked the witness for his valise, which contained his pistol. Witness, who had hidden the valise, prevailed on the defendant to abandon the row and remain in the coach. Presently Winn and his posse came in and arrested defendant, at which time defendant stated to them that if he had known Winn to be an officer he would have surrendered to him. Defendant did not resist arrest by Winn and the posse.

Ephraim Malone was next introduced by the defense. He sought to be excused from testifying, and finally declined to testify upon the ground that he was afraid if he testified to facts in his knowledge he would suffer at the hands of Winn, La Flore, or their friends. Compelled by the court to answer questions, he stated that he was present at the examination of the defendant before Esquire Watson on the night of the fight. While defendant, chained and tied, was being examined La Flore struck him once with his fist and afterwards with a scales weight. Winn afterwards turned defendant over to witness, and directed witness to keep him away from town that night as he might get hurt. Witness took the defendant to the woods and kept him until next morning.

*Dotson & Richardson,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   On the evidence as it is presented in the record before us, we do not think the conviction in this case should be permitted to stand.    Appellant was assaulted by one LaFlore; others engaged in the affray, assisting LaFlore, and were beating appellant when Winn, who was a deputy sheriff, and who is the party charged to have been assaulted, ran around the train of cars, and, without attempting to arrest any of the parties fighting the appellant, grabbed hold of appellant, and appellant struck him — so he testifies.    Other witnesses testify that Winn himself entered into the fight and commenced striking appellant with a board or "doty piece of plank."   Winn testifies that when he arrived at the scene of conflict he told the defendant he was an officer, and would have to arrest him.   "Defendant remarked:   'By God (or God d—n), I will see that you don't.'   I grabbed defendant, and during the scuffle we had, he struck me with his fist and a plank." No other witness heard Winn tell the defendant that he was an officer and would have to arrest him.   Defendant's own statement after the fight, and which was introduced in evidence, was that if he "had known Mr. Winn was an officer during the fight, he would have surrendered to him."

Now, if appellant, engaged in a serious fight with several other parties, was grabbed by Winn, and, not knowing that Winn was an officer, struck Winn in resistance to what reasonably might appear to him as an assault by Winn upon him, it is clear that he would be justifiable on the ground of self defense.   If Winn was an officer really intending to quell the difficulty and preserve the peace, it does appear to us as if he made a most serious mistake in accomplishing that object by grabbing hold of the man who was contending, single handed, against three or four others.   And it is but reasonable to suppose that under such circumstances defendant might well have mistaken Winn for "another Richmond in the field," come to swell the ranks and take part with his assailants.   If he acted upon such reasonable appearances, then he was only exercising his inalienable right of self defense, and should not be punished for doing so.

We do not deem it necessary to discuss the outrages committed upon defendant after his arrest, as disclosed in the record. Suffice it to say, we do not believe from the evidence that de-

fendant's guilt is made so clear and certain, under all the circumstances of this case, as that his conviction should be permitted to stand as a precedent.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*